**YANG You Yi, et al., Petitioners,**

v.

**Janet RENO, et al., Respondents.**

**Civ. A. No. 1:CV–93–1702.**

United States District Court,
M.D. Pennsylvania.

Jan. 5, 1994.

---

Beverly J. Points, Patricia J. Butler, Barley, Snyder, Senft & Cohen, York, PA, Lory D. Rosenberg, Washington, DC, for Yang You Yi.

Beverly J. Points, Barley, Snyder, Senft & Cohen, York, PA, Lory D. Rosenberg, Washington, DC, for Yee Bong Won.

Christopher William Reichow, York, PA, Lory D. Rosenberg, Washington, DC, for Li Guang Feng.

Thomas D. O'Shea, York, PA, Lory D. Rosenberg, Washington, DC, for Chen Chu Su.

Craig T. Trebilcock, Stock and Leader, York, PA, Lory D. Rosenberg, Washington, DC, for Pin Lin.

David H. Weinstein, Kohn, Savett, Klein & Graf, Anthony B. Haller, Frances P. Rayer, Pepper, Hamilton & Sheetz, Robert S. Kitchenoff, Seth Grossman, Kohn, Nast & Graf, P.C., Philadelphia, PA, Lory D. Rosenberg, Washington, DC, Sharon J. Phillips, New York City, for Pan Young Zhong.

Paul Cokely, Jr., Lebanon, PA, Lory D. Rosenberg, Washington, DC, for So Gee Dong.

Kevin M. Donovan, Morgan, Lewis & Bockius, Philadelphia, PA, Lory D. Rosenberg, Washington, DC, for Chang Chun Lu.

John M. Ogden, York, PA, Lory D. Rosenberg, Washington, DC, for Xin–Fei Zhang, Tong Wai Zhang.

Stephen D. Converse, York, PA, Lory D. Rosenberg, Washington, DC, for Dai Min Lu.

Anthony J. Hom, Hwang and Nix, P.C., Philadelphia, PA, Lory D. Rosenberg, Washington, DC, for Shi Chun Zheng.

Joshua D. Cohen, Hartman, Underhill and Brubaker, Lancaster, PA, Lory D. Rosenberg, Washington, DC, for Chun Hua Lin.

Lisa A. Baird, HIAS and Counsel, Washington, DC, for Chen Xing.

Thomas M. Place, The Dickinson School of Law, Carlisle, PA, Lory D. Rosenberg, Washington, DC, for Shuidi Zheng.

Timothy J. Shultis, Crabbs & Frey, Hanover, PA, Lory D. Rosenberg, Washington, DC, for Guo Zhen Xie.

Lory D. Rosenberg, Washington, DC, for all petitioners.

N. Christopher Menges, Menges & Snyder, York, PA, for Li Yun–You.

Vivian B. Narehood, Gibbel, Kraybill & Hess, Lancaster, PA, for Lin Ming Long.

Ann Carr, Lancaster, PA, for Dek Fun Lin, Sing Chou Chung.

Marc G. Tarlow, Kain, Brown & Roberts, York, PA, for Zhong Chen.

Gavin W. Markey, York, PA, for Wang Chao Lin.

Gavin W. Markey, York, PA, for Nian Ren Ling.

Tsiwen M. Law, Hwang & Nix, Philadelphia, PA, for Yeng Ming Lin.

Mary A. McDougall, Morgan, Lewis & Bockius, Philadelphia, PA, for Jong Chan Bin.

Michael Jay Krout, Morris & Vedder, York, PA, for Zeng Hua Zheng.

John R. Elliott, York, PA, for Cheng Yung Kwon.

Jessamyne M. Simon, Jill E. Garfinkle, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Rui Qui Huang.

Cindi L. Dresdner, New York City, for Shi–Mu Chen.

Kurt A. Blake, York, PA, for Gui Lin Cheng.

Jennifer H. Matson, York, PA, for Ren Yan Yang.

David J. Maisch, Brogue, PA, for Yong Zheng.

Charles Andrew Rausch, York, PA, for Kwai Sung Cheng.

Daniel M. Pell, York, PA, for Chen Xue Jian.

Joseph McHale, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Yi Hong Lin.

Frank Countess, York, PA, for Guo Zhi Lee.

Emma L. Oh, Philadelphia, PA, for Jian Le Shi.

Melanie Albert Zampini, York, PA, for Wu Chao.

Gerald A. Lord, Law Offices of J. Christian Ness, York, PA, for Xing–Kwong Zheng.

Loura A. Selfe, Atlee & Hall, Lancaster, PA, for Xue Yao Lin.

Timothy J. Bergere, Willan F. Joseph, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Jian Bin Lin.

Terry Peyser Blynn, York, PA, for Wing Jong Jung.

Hanna A. Dunlap, Barley Snyder Senft & Cohen, Lancaster, PA, for Bin Hua Zheng.

Katherine Pandelidis Granbois, Harrisburg, PA, for Xiang Gui Cao.

Judith Musselman, Harrisburg, PA, for Xuoxun Lee.

Sarah M. Bricknell, Buchanan Ingersoll, P.C., Harrisburg, PA, for Chai Kan Ching.

John B. Consevage, Harrisburg, PA, for Wang Ai Ming.

William D. Lenahan, Buchanan Ingersoll, P.C., Harrisburg, PA, for Jia Jian Wang.

Eileen Shimizu, Philadelphia, PA, for He Ping Cao, Zeng–Ping Lui, Kou Zhang Cheng, Gong Shi, Cai Wan Chen.

William H. Poole, Jr., York, PA, for Yue Feng Lee.

Jared Ward Ingersoll, Hanover, PA, for Zhao Shan Zhao.

Enid H. Adler, North Wales, PA, for Fen–Hou Chen.

Craig F. Wilson, Wilson & Associates, P.C., New York City, for Chong Sheng Qu, Bao Qiao Zhang, Zhen Haun Weng, Kang Di Weng, Cheng Xiao Dai, Guo Ping Yeh.

Xue–Dee Chen, pro se.

Mao–Jiang Lin, pro se.

Wen–Hao Chen, pro se.

Jian Fu Chai, pro se.

De Hui Chen, pro se.

Ji Li Zheng, pro se.

Fu Sing Zheng, pro se.

Ye Zing Chai, pro se.

Guo Ping Yeh, pro se.

Fa Yu Zhuang, pro se.

Zhou Chang, pro se.

Shi J Zheng, pro se.

Zhong Zhou, pro se.

Lian Bing Zheng, pro se.

Zhai Young Zhu, pro se.

Joel H. Cavadel, York, PA, for Zhai Young Zhu.

Xue Can Zou, pro se.

Xye Rong Zhan, pro se.

Au Zia Zhao, pro se.

Yue Feng Zhang, pro se.

Da He Zheng, pro se.

Shan Cien Zhang, pro se.

Nan Wei Zhang, pro se.

Hua Yi Zhon, pro se.

Ye Song, pro se.

Gin Guan Wu, pro se.

Yee Jan Wong, pro se.

Xin Chang Shang, pro se.

Zhong Wu Lou, pro se.

Huseh Ta Tang, pro se.

Wang Wu Dong, pro se.

Wang Guan Jun, pro se.

You Shui Wang, pro se.

Zim Sheng Whang, pro se.

Si Ou, pro se.

Li Tun Cheng, pro se.

Pan Shao Min, pro se.

You Quan Lin, pro se.

Bi Sheng Liu, pro se.

Xu Yong Lu, pro se.

Lu Tian Hao, pro se.

Ghuan Li Liu, pro se.

Jia Wen Liu, pro se.

Rui Kan Lin, pro se.

Xiang Keng Lin, pro se.

Kong Zhi Li, pro se.

Duan Sheng Lin, pro se.

Zhon Guan Li, pro se.

Jin Lim Fu, pro se.

Zhe Shung Jain, pro se.

Hyei Gwor, pro se.

Wing–Hon Cheng, pro se.

Dai Zi He, pro se.

Zhi Ping Gao, pro se.

Xiang Nmu Gao, pro se.

Yi Cheng Dong, pro se.

Ei Young Giang, pro se.

Son Shing Dong, pro se.

Jia Reng Dong, pro se.

Chi Chi Chung, pro se.

Wor Oi Chin, pro se.

Zhu F. Cheng, pro se.

Son Ching Cheng, pro se.

Gin Sen Cheng, pro se.

Tia Sian Chen, pro se.

Kan Guan Chen, pro se.

Kai Q. Zeng, pro se.

Guo Cheng Lin, pro se.

Xiang Guan Cai, pro se.

Chong Gu Sheng, pro se.

Xin Sing Zhou, pro se.

Yong Qui Chi, pro se.

Yong Ging Wu, pro se.

Cian Gluan Yong, pro se.

Cheng Ye Wu, pro se.

Ming Guang Liu, pro se.

Chun Lin Jin, pro se.

Po Chow Chun, pro se.

Jan Yon Chung, pro se.

Edward L. Crow, York, PA, for Chang Qing Zhou.

Robert R. Long, Jr., U.S. Attorney's Office, Harrisburg, PA, Lauri Stephen Filppu, Philemina McNeill Jones, Office of Immigration Litigation, Washington, DC, for George Maugans.

Robert R. Long, Jr., U.S. Attorney's Office, Harrisburg, PA, Lauri Stephen Filppu, Philemina McNeill Jones, Office of Immigration Litigation, Alexander H. Shapiro, Dept. of Justice, Civ. Div., Washington, DC, for David L. Milhollen.

Lauri Stephen Filppu, Philemina McNeill Jones, Office of Immigration Litigation, Washington, DC, for Richard J. Sharkey.

Lauri Stephen Filppu, Philemina McNeill Jones, Office of Immigration Litigation, Alexander H. Shapiro, Dept. of Justice, Civ. Div., Washington, DC, for J. Scott Blackman.

Lauri Stephen Filppu, Philemina McNeill Jones, Office of Immigration Litigation, Washington, DC, for U.S. I.N.S., Executive Office for Immigration Review, Richard J. Sharkey, Janet Reno, Doris Meissner.

Joseph J. Terz, Robert R. Long, Jr., U.S. Attorney's Office, Harrisburg, PA, for all respondents.

Kathleen Blanchard, Morgan Lewis & Bockius, Philadelphia, PA.

Sharon J. Phillips, New York City.

Gordon Quan, Chair, Immigration Comm. Asian Pacific Amer. Bar Assn., Houston, TX, for amicus, The Nat. Asian Pacific American Bar Ass'n.

---

**1.** Two Petitioners, Xin–Fei Zhang and Tong Wai Zhang, filed one joint petition. *See* Civil Action

*MEMORANDUM*

RAMBO, Chief Judge.

Before the court are the motions of Petitioner Yong Zhong Pan for permanent class certification and for a preliminary injunction. Briefs have been filed and the motions are ripe for disposition.

*Background*

The background of this case was set forth in detail in this court's order of November 24, 1993. Petitioners in this consolidated action are citizens of the People's Republic of China ("PRC") who were arrested and detained after the grounding of the *Golden Venture* in New York Harbor in June 1993 and who are currently subject to final orders of exclusion.

Approximately 120 *Golden Venture* detainees currently are housed in the York County Prison, a facility located in the Middle District of Pennsylvania. Many of the detainees, including Petitioner Pan and the other individual Petitioners in this action, have filed claims for asylum. After their asylum claims were rejected and their subsequent administrative remedies exhausted, the individual Petitioners filed the instant habeas actions.

At this point, more than fifteen aliens have filed individual petitions challenging final orders of exclusion.[1] Because the petitions raised many similar issues and counsel were filing virtually identical motions for temporary and permanent relief, the court consolidated the individual actions under the above caption and urged counsel for Petitioners to coordinate their efforts to reduce unnecessary repetition of motions and briefs.

On November 17, 1993, Petitioner Pan filed an amended petition/complaint seeking, *inter alia,* class certification and interim class relief. Petitioner requested that the court certify the following class pursuant to Federal Rules of Civil Procedure 23(b)(1) and (b)(2):

No. 1:CV–93–1786.

All persons who, as nationals of the People's Republic of China, are or in the future may be applicants for withholding of deportation from and/or asylum in the United States, in whole or in part because they have a clear probability (for withholding of deportation) or well-founded fear (for asylum) of persecution on account of coerced population control policies of the People's Republic of China.

(Class Certification Mot. at 2.)

Petitioner's class claims focus on the application of a Board of Immigration Appeals ("BIA") precedent decision, *Matter of Chang*, Int.Dec. No. 3107 (BIA 1989), to his claim. Specifically, Petitioner identifies the class issues as follows:

(1) whether the BIA, with the support or acquiescence of the other defendants, applies an erroneous standard for determining what constitutes an imputed political opinion within the meaning of the Refugee Act of 1980, as amended and interpreted by the Federal Courts, in connection with opposition to the coerced population control policies of the People's Republic of China;

(2) whether application by the BIA of its decision in *Chang* as binding precedent in the cases of plaintiff-petitioner and other Class members conflicts with applicable Presidential Executive orders and regulations and directives promulgated by the Attorney General;

(3) whether Immigration Judges and the BIA have improperly applied *Chang* as an automatic, absolute bar to consideration of the particular facts to an individual applicant for asylum arising out

of the applicant's opposition to the coerced population control policies of the PRC; and

(4) whether application by the BIA of its decision in *Chang* as binding precedent in the cases of plaintiff-petitioner and other Class members conflicts with the Refugee Act of 1980, as amended and as interpreted by the Federal Courts.

(Pet.'s br. in support of class certification mot. at 11 (citing Am.Pet./Compl. at ¶ 13)).

Because Petitioner's proposed class includes aliens in custody outside the district and those who have not exhausted their administrative remedies, his request for relief raises significant jurisdictional issues. The court specifically requested that the parties address these issues in their briefs.[2]

At the same time, however, the court was greatly concerned that class members would be irreparably harmed should they be deported pending a resolution of the request for class certification and of the merits of their claims for injunctive relief. After an initial review of the relevant case law and in order to maintain the status quo pending a determination of the scope of the court's jurisdiction, this court conditionally certified a class limited to those aliens in the district who had exhausted their administrative remedies.[3] Based on these same concerns, the court also issued a temporary restraining order barring the government from deporting any class members before December 10, 1993. At the request of the government, this deadline was later extended to January 5, 1994 to permit full briefing of the issues raised.

---

**2.** Petitioner Pan did not file briefs in support of his motions for class certification and for a temporary restraining order and preliminary injunction at the time the motions were filed.

**3.** Specifically the court conditionally certified a class consisting of:

All nationals of the People's Republic of China (1) who are now or during the pendency of this action come to be confined within the Middle District of Pennsylvania; (2) who have applied for and not abandoned a claim for withholding of deportation from and/or asylum in the United States, in whole or in part because they have a clear probability (for withholding of deportation) or well-founded fear (for asylum)

of persecution on account of coerced population control policies of the People's Republic of China; (3) who have received an adverse determination of their claims from the INS; (4) who have exhausted their administrative remedies with respect to such claim; and (5) who have not voluntarily chosen to return to their country of origin.

(November 24, 1993 Order at 9). The scope of this class was clarified by the court in its order of December 6, 1993 which specified that class members would not lose their class status upon transfer from the district. (Dec. 3, 1993 Order at 2).

*Discussion*

## I. Class Certification

### A. Jurisdiction under 28 U.S.C. § 1331

#### 1. Relevant Precedent

As the court noted in its November 24, 1993 memorandum, the propriety of certifying the proposed class depends, in the first instance, on the jurisdiction of this court to entertain Petitioner's action under 28 U.S.C. § 1331.

█ As a general rule, agency action is presumed to be subject to judicial review, absent specific Congressional direction to the contrary. *McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 496, 111 S.Ct. 888, 898, 112 L.Ed.2d 1005 (1991) (referring to the "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action"). However, in the context of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.,* while Congress has provided for judicial review of agency determinations of excludability or deportability, it has imposed certain limits on the timing and scope of such review.

█ First, an alien subject to a final order of exclusion may seek review of his claim in the district court only in a habeas proceeding. "[A]ny alien against whom a final order of exclusion has been made heretofore or hereafter under the provisions of [8 U.S.C. § 1226] ... may obtain judicial review of such order *by habeas corpus proceedings and not otherwise.*" 8 U.S.C. § 1105a(b) (emphasis added).[4] This requirement that an excludable alien proceed in habeas proceedings generally limits both the court's subject matter jurisdiction, *see* 28 U.S.C. § 2241 (writ of habeas corpus may be granted by the federal courts "within their respective jurisdictions"); *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 495, 93 S.Ct. 1123, 1129–30, 35 L.Ed.2d 443 (1973) (court's habeas jurisdiction dependent upon jurisdiction over petitioner or custodian); *Schlanger*

*v. Seamans,* 401 U.S. 487, 490 n. 4, 491, 91 S.Ct. 995, 997–98 n. 4, 998, 28 L.Ed.2d 251 (1971) (absence of custodian in forum fatal to habeas action; nationwide service of process over officer or employee of the United States not applicable to habeas proceedings), and its scope of review. *Kessler v. Strecker,* 307 U.S. 22, 34, 59 S.Ct. 694, 700, 83 L.Ed. 1082 (1939) ("A district court cannot upon *habeas corpus,* proceed *de novo,* for the function of investigation and finding has not been conferred upon it, but upon [administrative officials]"); *Marczak v. Greene,* 971 F.2d 510, 518 n. 10 (10th Cir.1992) (in habeas challenge to final order of exclusion or deportation, administrative record "must serve as the sole basis for judicial review").[5]

█ Second, judicial review under the INA is generally limited to those individuals who have exhausted their administrative remedies. *See* 8 U.S.C. § 1105a(c) ("[a]n order of deportation or exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws or regulations"); *see also Garcia–Mir v. Smith,* 766 F.2d 1478, 1488 (11th Cir.1985) (exhaustion of administrative remedies is non-waivable jurisdictional requirement), *cert. denied sub nom. Marquez–Medina v. Meese,* 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 325 (1986). This rule requires an alien to raise and exhaust his remedies with respect to each claim or ground for relief in order to preserve a right of judicial review of that claim. *Alleyne v. INS,* 879 F.2d 1177, 1182 (3d Cir.1989) (§ 1105a(c) "bars consideration of particular questions not raised in an appeal to the [BIA]").

However, in certain circumstances, courts have permitted excludable or deportable aliens to avoid the INA's general habeas and exhaustion limitations. These courts have permitted review of general allegations of procedural or programmatic illegal or unconstitutional conduct in the administration of

---

4. In contrast, final orders of deportation are reviewable in the first instance in the courts of appeals. 8 U.S.C. § 1105a(a).

5. As previously noted by this court, these general rules are not without exceptions. (*See* December

7, 1993 order at 4–5 (granting individual Petitioners opportunity to conduct limited discovery regarding alleged bias against *Golden Venture* detainees).)

the INA. These "collateral" challenges have been permitted under the district court's general federal question jurisdiction, 28 U.S.C. § 1331. Courts have not necessarily required exhaustion of administrative remedies for such a challenge.

First, a series of cases have permitted challenges to the procedures used to implement the legalization provisions of the Immigration Reform and Control Act of 1986 ("IRCA"), Public Law 99–603, 100 Stat. 3359 (1986). In *McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 494, 111 S.Ct. 888, 897, 112 L.Ed.2d 1005 (1991), the Supreme Court upheld the assertion of § 1331 jurisdiction in a challenge in the district court to certain practices and procedures adopted by the INS in its administration of the Special Agricultural Worker ("SAW") legalization program. The challenged practices effectively precluded an alien from making an adequate record for appeal. *Id.* at 487–88, 111 S.Ct. at 893–94 (detailing alleged procedural abuses including lack of opportunity to challenge adverse evidence, denial of an opportunity to present witnesses, incompetent translation and failure to make verbatim recordings of office interviews).

A provision of the SAW statute barred judicial review "of a determination respecting an application for adjustment of status" except in the context of judicial review of a deportation order. 8 U.S.C. § 1160(e). As a general matter, deportation orders are appealable only to the courts of appeals. 8 U.S.C. § 1105a(a). However, the courts of appeals lack the capacity to adequately supplement the record or to make appropriate findings of fact. 498 U.S. at 496–97, 111 S.Ct. at 898–99. Further, under the INA, appellate review of a final order of deportation is generally limited to the administrative record. *Id.;* 8 U.S.C. § 1105a(a)(4). Therefore, to limit applicants to review only in deportation proceedings would have amount-

ed to a complete denial of meaningful judicial review of the claims before the *McNary* court. *Id.* at 496, 111 S.Ct. at 898. Reluctant to conclude that Congress intended such a result and noting that § 1160e referred to "*a* determination respecting an application," rather than using broader exclusionary language, the Court found that § 1160e did not bar "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications." 498 U.S. at 492, 111 S.Ct. at 896. Such actions could proceed in the district court under its § 1331 jurisdiction. *Cf. Reno v. Catholic Social Servs., Inc.,* —— U.S. ——, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (general federal question jurisdiction in district court to entertain challenge to other IRCA legalization provision, but noting that claims of most alien plaintiffs not ripe).[6]

Other lower courts also have permitted § 1331 "collateral" challenges to other INS practices and procedures. These cases essentially fall into two conceptual categories.[7] First, courts have permitted § 1331 jurisdiction where the challenged administrative practice, policy or regulation effectively precludes adequate development of the administrative record and, consequently, of meaningful judicial review. *See, e.g., El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746–47 (9th Cir.1992) (§ 1331 jurisdiction proper in class challenge alleging systematic inadequate translation of immigration proceedings by INS); *Montes v. Thornburgh,* 919 F.2d 531, 535 (9th Cir.1990) (§ 1331 jurisdiction proper in class challenge to actions of individual Immigration Judge who refused to accept documents not in conformance with his personal filing requirements); *Jean v. Nelson,* 727 F.2d 957, 979–80 (11th Cir.1984) (§ 1331 jurisdiction proper in class challenge to INS failure to give notice of right to apply for asylum), *aff'd with opinion,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985); *Haitian*

---

**6.** In *Catholic Social Services,* the Supreme Court did not specify whether its ripeness finding was based on a conclusion that the district court had no Article III jurisdiction to hear the case or whether its ruling was merely a prudential one.

**7.** The various courts permitting jurisdiction under § 1331 have not always clearly articulated

their rationale; nor are their proffered reasons necessarily all consistent with one another. The following analysis is the court's attempt to synthesize the various precedents in a manner consistent with the language of the statute and Congressional intent as evidenced by the structure of the statute and the legislative history.

*Refugee Ctr. ("HRC") v. Smith,* 676 F.2d 1023, 1033 (5th Cir.1982) (§ 1331 jurisdiction proper in class challenge to INS failure to maintain verbatim record of asylum interviews, failure to allow inspection of nonrecord material relied upon, failure to forward all relevant evidence to State Department, failure to inform aliens of availability of legal counsel). In each of these cases, the very practices challenged left the record either incomplete or unreliable.

In this respect, these cases are consistent with the concerns expressed by the Supreme Court in *McNary.* In that case, the Court explicitly noted that the practices being challenged, specifically, a lack of an opportunity to challenge adverse evidence, the denial of an opportunity to present witness, incompetent translation and the failure to make verbatim recordings of interviews, prevented adequate development of the administrative record. 498 U.S. at 497, 111 S.Ct. at 898–99. In these circumstances, meaningful judicial review of the alien's claims was not possible before the court of appeals. The Court found this result inconsistent with the Congressional intent behind enactment of provisions governing SAW determinations. *Id.*

In a second category of cases, courts have permitted the exercise of § 1331 jurisdiction where the claims at issue were not amenable to individual habeas review, either because the claims would be moot by the time of habeas review, *see, e.g., Jean,* 472 U.S. at 846, 105 S.Ct. at 2993 (challenge to parole procedures adopted by INS),[8] or because the nature of the challenge was such that it could not be dealt with adequately in an individual alien's administrative or habeas proceeding, *see, e.g., McNary,* 498 U.S. at 497, 111 S.Ct. at 898–99 (noting that district court fact-finding is often necessary in "pattern and practice" cases); *HRC,* 676 F.2d at 1033 (allegations that INS systematically engaged in unconstitutional practices and used unfair or illegal procedures in attempt to enforce mass deportations "independently cognizable" under § 1331).

### 2. The Instant Case

In this case, Petitioner's class claims are, at bottom, a challenge to the validity of the BIA's legal analysis in *Matter of Chang,* Int. Dec. No. 3107 (BIA 1989), and to the BIA's consistent adherence to that precedent.[9] In *Matter of Chang,* the BIA determined that the PRC's one child, one couple policy was not, on its face, persecutive within the meaning of the relevant asylum statutes and regulations. Subsequently, the BIA has made clear that it considers that *Matter of Chang* to be legally correct and that it will apply the decision to cases coming before it. *See, e.g., In re Young Zhong Pan,* A72 761 990, (BIA October 15, 1993), Certified Admin.R. at 7–8; *Matter of G–,* Int.Dec. No. 3215 (BIA Dec. 8, 1993). Petitioner claims that this interpretation is contrary to the Refugee Act of 1980, the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.,* and to various Executive orders, policy directives, and regulations.

After an extensive review of the statutory provisions, relevant legislative history and cited precedent, the court concludes that § 1331 jurisdiction over Petitioner's class claims is not proper. Instead, these claims must be determined in the context of habeas proceedings.

Several factors contribute to the court's conclusion. First, Petitioner currently is subject to a final order of exclusion. Section 1105a(b) specifically references aliens with Petitioner's status, mandating that *"any alien against whom a final order of exclusion has been made* heretofore or hereafter under the provisions of [8 U.S.C. § 1226] ... may obtain judicial review of such order by habeas corpus proceedings and not otherwise." 8 U.S.C. § 1105a(b) (emphasis added). Petitioner Pan is clearly within the referenced class.

The specific reference to those aliens with final orders demonstrates a Congressional intent to limit an alien in these circumstances to one bite at the apple—an apple of the habeas variety. The legislative history of § 1105a indicates that the provision was de-

---

**8.** The Supreme Court did not address the issue of the court's jurisdiction over the class action.

**9.** *See* discussion of class claims, *supra* at 3.

signed to eliminate multiple avenues of appeal. "The purpose of section [1105a] is to create a single, separate, statutory form of judicial review of administrative orders for the deportation and exclusion of aliens from the United States." H.R.Rep. No. 1086, 87th Cong., 1st Sess.1961, *reprinted in* 1961 U.S.C.C.A.N. 2950, 2966. In enacting the provision, Congress sought to prevent the abuse of judicial review evidenced by actions brought by deportable or excludable aliens "solely for the purpose of preventing or delaying deportation indefinitely." *Haitian Refugee Ctr. v. Civiletti,* 503 F.Supp. 442, 457 n. 29 (S.D.Fla.1980) (quoting H.R.Rep. No. 1086, 87th Cong., 1st Sess.1961, *reprinted in* 1961 U.S.C.C.A.N. 2950, 2967), *aff'd as modified, HRC v. Smith,* 676 F.2d 1023 (5th Cir. 1982). Thus, absent extraordinary circumstances as described above, this court is not persuaded that Congress intended to permit an individual subject to a final order of exclusion to proceed under § 1331.[10]

Second, the court is not persuaded that Petitioner's challenge is truly "collateral" to his final order of exclusion. Petitioner claims that he is not challenging his order of exclusion, only the legal standard that is (at least partially) the basis for that order. The court does not find this distinction meaningful.

The fact that the BIA applies the same legal standard to aliens other than Petitioner Pan does not, in itself, make Petitioner's claims "collateral" to an order of exclusion and subject to a § 1331 challenge. If this were so, then every legal determination in every precedent decision issued by the BIA would be subject to a class challenge. Congress clearly did not intend such a result.[11] Thus, the mere fact that the standard applies to more than one alien is not sufficient to permit Petitioner to challenge the BIA's determination in other than a habeas proceeding.

Moreover, the court is not persuaded that Petitioner's claims fit within the categories of exceptional cases in which courts have permitted § 1331 jurisdiction. First, Petitioner is not challenging a practice or policy which precluded the adequate development of the administrative record. Petitioner does not claim that the immigration judge refused to hear or accept evidence because of the *Chang* decision. Petitioner does not claim that the record is inaccurate or unreliable because of some agency practice. *See, e.g., El Rescate,* 959 F.2d at 746–47 (inadequate translation);[12] *Montes,* 919 F.2d at 535 (record incomplete because immigration judge arbitrarily refused to accept evidence). Rather, Petitioner makes an essentially legal argument that *Chang* on its face and as applied is erroneous. Petitioner had an opportunity to present his legal challenge to *Matter of Chang* to the BIA and will have the opportunity to renew that challenge before this court in a habeas proceeding. Thus, the first exception does not apply.

Nor does the second exception apply. Petitioner's claims are amenable to disposition upon individual habeas review. This is not a situation such as that in *Jean v. Nelson,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985), where the alien's challenge to parole regulations would be moot by the time of habeas review of a final exclusion order.

---

10. Notably, the United States Supreme Court has not approved the exercise of § 1331 jurisdiction over the claims of an alien subject to a final order of exclusion or deportation. While the court permitted § 1331 jurisdiction in *McNary,* the aliens in that case were not yet subject to deportation proceedings. Interestingly, in *Catholic Social Services,* a post-*McNary* decision, the Supreme Court held that once aliens were subject to deportation proceedings, they would be "temporarily barred" from judicial review of their claims until they had exhausted their administrative remedies. —— U.S. at ——, 113 S.Ct. at 2497. At that point, they would be limited to the review provided under the INA. *Id.*

11. Were Petitioner's theory to prevail, it could result in exactly the type of multiple, piecemeal litigation that Congress intended to foreclose in enacting the judicial review provisions of § 1105a. Various courts throughout the country arguably would have jurisdiction over different aspects of a particular alien's claim, creating a great incentive for forum-shopping and multiple possibilities of forestalling deportation.

12. While many of the individual Petitioners claim that there were translation problems, these claims have not been raised as class issues.

Nor is the court persuaded that the nature of Petitioner's claim is such that review of it individually would be inadequate. Petitioner's class claims challenge the BIA's interpretation of applicable asylum law. While Petitioner also challenges the application of that precedent to his particular case,[13] the court believes that this allegation, too, can be dealt with on an individual basis. Thus, the court is not persuaded that any of the exceptions permitting § 1331 jurisdiction apply in this case.

Finally, Petitioner argues that the court should assume jurisdiction over his class claims because determining the validity of *Matter of Chang* once and for all in this proceeding would promote judicial economy. Petitioner insists that this result is consistent with the Congressional goal of ensuring a speedy resolution of challenges to orders of exclusion or deportation. This argument is unpersuasive on several levels.

First, at least in the context of individuals subject to final orders of deportation, the court is not persuaded that efficiency gains necessarily will outweigh the externalities of granting an additional layer of § 1331 review. Petitioner requests that the court order a blanket remand of all decisions relying in whole or in part on *Chang* if it determines that *Chang* is erroneous. However, if, as the government alleges here, there are sufficient grounds independent of *Chang* to find an alien excludable, the remand would not promote efficiency. Rather, it would serve only to delay an inevitable deportation.[14]

Second, the government alleges that Petitioner either never raised or at some point waived certain arguments during the course of his administrative proceedings.[15] Were the court to permit § 1331 jurisdiction, an alien such as Petitioner who had allegedly waived or failed to raise an argument in his administrative proceedings would have his claim revived in the § 1331 proceedings. This is clearly inconsistent with the Congressional intent to channel all claims into a single, final proceeding.

Finally, the court is not persuaded that Congress intended to permit review outside the context of habeas proceedings, at least with respect to claims which could be adequately reviewed via habeas, even if another scheme might at times prove more speedy or efficient. For the reasons articulated above, the court concludes that Congress intended to limit § 1331 jurisdiction to those cases in which its administrative scheme permits no effective or meaningful judicial review.

In sum, the court finds that Petitioner's claim is not proper under § 1331. Therefore, his claims must be brought in a habeas proceeding.

### B. Propriety of a Habeas Class

■ There is some authority to suggest that class-wide habeas relief may be appropriate in some circumstances. *See, e.g., Fernandez–Rogue v. Smith,* 539 F.Supp. 925, 929 n. 5 (N.D.Ga.1982) (discussing class certification for habeas actions by analogy to Rule 23) and authorities cited therein. Such a class would be subject to the exhaustion and jurisdictional limits of a habeas proceeding.

■ While the court may have the power to treat the claims in such fashion, at this point, it is not persuaded that this case warrants such treatment. The court sees no real advantage to class treatment here. Individuals are adequately able to protect their interests by pursuing their administrative reme-

---

13. *See* Petitioner's statement of class claims, including the following issue:

    (3) whether Immigration Judges and the BIA have improperly applied *Chang* as an automatic, absolute bar to consideration of the particular facts to an individual applicant for asylum arising out of the applicant's opposition to the coerced population control policies of the PRC.

(Pet.'s br. in support of class certification mot. at 11 (citing Am.Pet./Compl. at ¶ 13).)

14. For example, the government alleges that the BIA found Petitioner not credible and that, therefore, even if *Chang* were overruled, Petitioner would still be excludable. The court expresses no opinion on the merits of this argument at this time.

15. The court expresses no opinion regarding the merits of this claim.

dies and seeking judicial review. At this point, all such cases filed within this district are being assigned to this judge. Thus, to the extent that the cases raise common issues of law or fact, they can be treated in a consolidated fashion. Accordingly, the court will not treat the claims in class fashion at this time.[16]

## II. Motion for a Preliminary Injunction

The injunctive relief requested is premised on the granting of class certification. Because the motion for class certification will be denied, the motion for a preliminary injunction is moot. Accordingly, the conditional class certified on November 24, 1993 will be de-certified. The temporary restraining order entered that same date and subsequently extended to January 5, 1994 will be vacated.[17]

---

16. A more extensive discussion of class certification can be found in this court's memorandum of November 24, 1993.

17. This memorandum and the accompanying order do not affect the stay entered pursuant to the order dated December 7, 1993. The order mere-ly formalizes the government's current policy of not excluding aliens with pending habeas petitions and would permit affected aliens an opportunity to petition for interim relief should the government alter that policy.